Mrs. Kreider, good morning. Good morning, judges. May it please the court, my name is Erica Kreider, representing the petitioner. Could you speak up just a little bit? Yes. That's great. Yes. Thank you. I would like to reserve two minutes for rebuttal. This is an asylum, political asylum case. The petitioner was active in a student group. The members, the leaders in the student group, a humanitarian group, were summoned to Guatemala City to speak with a government official where they were warned to cease and desist that the people that they were helping were guerrilla sympathizers or guerrillas. They didn't. Mr. Perez-Ajanel and his fellow student leaders began getting death threats. Two were killed or disappeared. He moved. He was pursued in Guatemala City. He fled the country to Honduras. He returned back briefly within ten days. People had come to his home looking for him by name. This is a case, if I remember correctly, where the asylum officer denied asylum. The immigration judge granted and was quite critical of the asylum officer's assessment of credibility. Yes, Your Honor. But it went to the BIA and the BIA reversed the immigration judge. The BIA reversed it, yes. The BIA ignored a number of facts in its decision. First of all, the BIA decision claimed that there was no nexus, no on account of for the persecution. The BIA decision does not mention the meeting with the government official or that the government official warned the students that they were helping guerrilla sympathizers. The BIA decision does not mention that other persons in the same group, other leaders in the student group, received threatening messages. Is it your position that the on account of prong is satisfied in this case because of your client's actual opinion or because of an opinion imputed to him? Imputed opinion and both actual opinion and actual humanitarian opinion. My client is not a guerrilla or a guerrilla sympathizer, but primarily imputed opinion, Judge. Go ahead and continue with what you were saying. Yes. The decision, the BIA decision is not based on substantial evidence because it ignores so much of the facts of the case. The courts have made a lot of the standard of review in an immigration case. And what the BIA has done here is to simply conveniently omit a number of facts which would support a finding of past persecution and a grant of political asylum. Deference to the BIA decision does not mean rubber stamping a denial. Then the BIA looked at the petitioner's asylum application in a piecemeal fashion rather than cumulatively. And only through this sort of piecemeal partial analysis of the case was the BIA able to find that he had not shown a well-founded fear. The service has cited Lim, arguing that because death threats alone were not enough, and the respondent obviously, the threats never actually succeeded as to the petitioner, I mean he's here. That he does not therefore qualify for asylum. But Lim acknowledged that repeated and especially menacing death threats can constitute a primary part of past persecution with confrontation or other mistreatment. Well, there was confrontation in this case. Respondent got threats at his work, at his home, was followed in Guatemala City and again threats at his home. Other particularly menacing actions were the threats and the disappearances of two of the other four student group leaders. I mean this is not some casual thing where you're not really sure whether the persecutor intends to follow through on his threats or not. I mean it was quite clear. And there is basically no way that a court could find that the BIA decision is supported by substantial evidence that a reasonable fact finder looking at these particular facts could find in favor or against rather the petitioner. The service has also talked about changed country conditions. And cited Gonzales Hernandez in a recent memo note to the court. Gonzales Hernandez is easily distinguishable from the petitioner's case. Gonzales Hernandez was a man who was active in politics in Guatemala about six years before the petitioner. The persecutor in that case was not the Guatemalan government. The persecutor in that case was a fairly unknown political party. Even at the time of the persecution in Gonzales Hernandez, it appears that internal relocation was an option unlike the petitioner's case. And finally, whatever changed circumstances there may be in Guatemala, the 1997 State Department report provides information only on general grounds and does indicate that there are many cases of persecution on the part of police officers and others, actions which are committed with impunity. This is not the sort of evidence which would make the petitioner feel particularly comfortable if he were to have to return to Guatemala. You're right at two minutes. Did you want to save it? Yes, I did want to save it. Thank you. Thank you for your argument. We'll hear from the service at this time. Millett. Good morning, Your Honor. May it please the Court. Thomas Millett, Civil Division, United States Department of Justice for Respondent. Is your opponent correct that the BIA does not mention the meeting with Salvatore Urizar? No, Your Honor. I don't agree with that, and that was one of the points I did want to raise. If we look at the BIA's opinion, it does indicate that one of his arguments was that his activities in aiding the indigenous poor in Guatemala had caused him, quote, to be identified by the Guatemalan government as a guerrilla sympathizer. Now, the only evidence in the record on that point is the Urizar meeting. So I believe that certainly is a clear reference to that particular meeting in the BIA's opinion because there simply is nothing else in the record, and that's one of the points here, there's nothing else in the record that ties petitioner's activities as someone who is aiding the poor to the government. That sounds like a conclusion and not a discussion. But it is a reference. It certainly indicates that it did not ignore that argument. The BIA obviously had to make conclusions based upon the arguments and evidence before it. This meeting is not an argument. It's a fact. That's correct. That's correct. Correct? That's correct. And the petitioner is found entirely credible by the immigration judge, a finding left undisturbed by the BIA, correct? And we don't question credibility at this point, Your Honor. And he describes this meeting with Urizar and what occurred in it, and it's pivotal to his claim, isn't it? It is described in great detail in the asylum hearing, and I think it's important to note that in the asylum hearing, petitioner admitted that he was not threatened at that meeting. There was no intimidation at that meeting. There was no force. There was no threat of force. There were no guards. There were no police. He was invited to the meeting by a letter coming in the regular mail, and at the conclusion of that meeting, neither petitioner nor any of his colleagues changed any of their conduct. He did shortly after the meeting begin to receive threatening phone calls. And there was nothing in that. Again, we don't dispute that that conduct occurred. He received threatening phone calls. He said he received letters, visits to his home, and the like. However, there is nothing in the record that ties those events to petitioner's activities helping the local indigenous poor, other than the fact that they occurred after the Urizar meeting. Now, I will not ---- Is there any alternative explanation available from the record? I mean, why else did it happen? I will not disagree with the conclusion that a reasonable fact finder could have found in petitioner's favor, but that's not the standard here. The standard is not a question of whether reasonable minds can differ. That's not the question my colleague just asked you. The question is, is there some alternative explanation for causation here? Did the government offer one? No. There are facts upon which one could suggest another alternative. For example, there are facts in the record indicating that petitioner deserted from the Army at some point. There are certainly facts known in the country report indicating that this was a violent time in a violent country, and there was a great deal of violence on all sorts of levels. The question, however ---- How many of these students went to the meeting with Urizar? I guess four or five. How many survived? The evidence in the record is that two were disappeared and one may have been killed. So there's a meeting with a government official that they're summoned to. He tells them that they're not helping the poor, they're helping guerrillas. He also tells them, we know who you're dealing with. Then very shortly there are threatening calls, and then two, almost half of the student delegation that went to this meeting are kidnapped. One's missing, one's found dead and tortured. And the government's position is that the petitioner hasn't proved a causal connection? Yes, that is the position that the BIA took. A couple of things, Your Honor. First of all, you've summarized what occurred over a period of, I believe it was about eight months. So there is some span of time occurring here. I thought the telephone calls came within days of the meeting. Am I wrong? The telephone calls did. The disappearance of the first one was, I believe, seven or eight months later. And it was while Petitioner was in this country that he indicated he received a letter from his mother that one of his colleagues may have been murdered. Again, Your Honor, I think the standard of review here is critical. It's not whether one could have concluded reasonably that there was persecution or, well, found a fear of persecution. The statement you just made, here's my understanding, that the kidnapping of the president of this group occurred in November of 1994? I believe that's correct. From Rotolahu, if I'm pronouncing that correctly, this is the city where the petitioner lived. Yes, Your Honor. And the petitioner was living in the city at the time that kidnapping occurred. That's correct. Right? He wasn't here in the United States and heard about it from his mother. That's correct. Okay. Go ahead. I do think, given your alternative causal hypothesis, though, is there any evidence to indicate that any other members of the student group were deserters in the Army? No. So then you're down to the general violence of the country. Are those the only two alternative causal hypotheses that you have for the causal nexus? Your Honor, I don't think it's the government's burden to explain this away. No, but I'm asking you the question. I think we understand the standard of review. I'm just asking for you to help us to see whether there are any other causal hypotheses that are, you know, in the record from which we could make that conclusion. Well, the country report that's in the record indicates that there was a great deal of simply criminal activity in the country at the time. Okay. And there's nothing in the record that indicates that the government didn't offer that theory in this case, that this was the victim of these killings and threats were the product of a criminal activity, right? No, Your Honor. The BIA applying the precedence of this court looked at those cases, and particularly cases like Lim, which has facts that are almost on all fours with this one, where a petitioner claimed that because of his political activities, in that case I believe it was testifying as a witness, as a police officer, he'd been put on a political hit list by a particular political party. He had received death threats with distinctive markings. Some of his colleagues had been killed. But on that basis, this court found that there was insufficient evidence of persecution, first of all, because there had been no close physical confrontation, and that's certainly lacking here. And then, although it could be evidence of future persecution, and we don't dispute that the evidence of the events here could have been considered rationally as evidence of future persecution, however, the BIA found, looking at those threatening activities, that there was nothing on the face of those activities that tied them in any way to petitioner's activities helping the poor in Guatemala, other than the one meeting with Urza, which petitioner admitted on the record in the asylum hearing, he did not interpret as a threat. Even if you would disagree on those two points, and that is that there was no past persecution or no fear of future persecution based on the events that occurred to petitioner here, the third factor in this case is the BIA's interpretation of the conditions in Guatemala at the time it issued its decision. And you may disagree with the BIA on the first two points, but the third point, I believe, would be sufficient in and of itself to justify the BIA's decision here. In Ventura and in Gonzales-Hernandez, the courts indicated, interpreting the very same country report that was before the BIA here, the 1997 report for Guatemala, that the BIA's interpretation of even an ambiguous report is deserving of great deference where there is at least some individualized finding by the BIA, that that would be sufficient to amount to substantial evidence to carry the day for a BIA opinion. And I would submit here that the BIA's interpretation, it's the same report, so it should get the same level of deference, and it does, albeit cryptically, I admit, it does indicate in the opinion that its interpretation of that report was that the type of persecution that the petitioner feared had abated. And there's certainly nothing in that country report that indicates that people who were helping the local poor were being persecuted by the government. It says that the Civil War had terminated. It says that student leaders had not been victims of any violence. There have been no reports of violence against student leaders for at least the last six months. And on that basis alone, even if you disagree with the first two points as to whether there was past persecution or whether there was a showing that the activities were on account of political opinion, the third point would still be sufficient to sustain the BIA's decision. And my time has expired. Thank you for your argument, Counsel. Rebuttal. Thank you, Your Honors. I would like to refer to a couple of cases, Ruano and Rios, both of which deal with past persecution and changed country conditions. Ruano, the facts were very much like the petitioner's death threats, quit his job, quit the party, near face-to-face encounters. The Ruano court found this constituted past persecution, and the immigration service did not rebut the fear of future persecution. The court noted that the, in that case, 96th State Department report corroborated the petitioner's fears of persecutions, if anything. In Rios, a similar case, the court was using a 98th State report. The court found that the 98th report was insufficient to establish changed conditions. It provided information only on general grounds, nothing refuting the petitioner's claim on an individualized basis, which this court has held is necessary when dealing with a case of past persecution. To simply say that the Civil War has abated is not enough. There needs to be a finding as to the persecution feared and or faced by the particular petitioner in the case in order to satisfy changed country conditions in a case in which a petitioner has faced past persecution. Okay. Thank you. Thank you very much for your argument. Thank both counsel for their arguments. The case just argued will be submitted for decision.
judges: Hawkins, Thomas, Clifton